UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SEMONE KING,

                Plaintiff,                FILE NO. 1:05-CV-552

v.                                       HON. ROBERT HOLMES BELL

CITY OF GRAND RAPIDS, et al.,

                Defendants.
_____/

**OPINION**

      This is a civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff Semone King alleges that police officers, Mark Waichum and Joshua Cornell used excessive force and falsely arrested her, in violation of both federal and state law.[1] The matter presently is before the Court on Defendants' motion for summary judgment (Docket #61). For the reasons that follow, the motion is granted.

**I.**

      On a motion for summary judgment, a court must consider all pleadings, depositions, affidavits and admissions and draw all justifiable inferences in favor of the party opposing

---

[1] The amended complaint further alleged that the City of Grand Rapids failed to train officers, tolerated repeated acts of police misconduct, failed adequately to investigate citizen complaints, and was deliberately indifferent to the rights of citizens. By Order granting the parties' stipulation, the claims against the City of Grand Rapids were dismissed on September 6, 2006. As a consequence, the only claims remaining before the Court are the individual claims against Officers Waichum and Cornell.

the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court, however, "'need not accept as true legal conclusions or unwarranted factual inferences.'" *Michigan Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 533 (6th Cir. 2002) (quoting *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). The party moving for summary judgment has the burden of pointing the court to the absence of evidence in support of some essential element of the opponent's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). Once the moving party has made such a showing, the burden is on the nonmoving party to demonstrate the existence of a genuine issue for trial. *Id.* Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Community Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005).

In order to prove that a triable issue exists, the nonmoving party must do more than rely upon allegations, but must come forward with specific facts in support of his or her claim. *Celotex*, 477 U.S. at 322; *Mulhall v. Ashcroft*, 287 F.3d 543, 550 (6th Cir. 2002). A party opposing a motion for summary judgment "may not merely recite the incantation, 'credibility,' and have a trial in the hope that a jury may believe factually uncontested proof." *Fogery v. MGM Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). After reviewing the whole record, the court must determine "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  "'[D]iscredited testimony is not [normally] considered a sufficient basis'" for defeating the motion.  *Anderson*, 477 U.S. at 256-57 (quoting *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 512 (1984)).  In addition, where the factual context makes a party's claim implausible, that party must come forward with more persuasive evidence demonstrating a genuine issue for trial.  *Celotex*, 477 U.S. at 323-24; *Matsushita*, 475 U.S. at 586-87; *Street*, 886 F.2d at 1480.  "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Daniels v. Woodside*, 396 F.3d 730, 734 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252).

## II.

On Sunday, August 17, 2003, two Grand Rapids police officers went to 128 Baylis to follow up on a domestic violence investigation.  The officers became involved in a dispute with Tyrosh Brown, Plaintiff's brother.  When the officers attempted to arrest Brown, he resisted, resulting in a call for backup that drew multiple additional officers to the scene. Two

3

officers who responded to the call for backup were Defendants Joshua Cornell and Mark Waichum.[2]

On that date, Plaintiff Semone King was at home feeding her newborn daughter when she received a telephone call from her nine-year-old daughter, Jashareh, asking Plaintiff to come to get Jashareh and her five-year-old brother, Jaelyn, from their grandmother's home at 128 Baylis because the police were there. Plaintiff did not immediately leave, and she continued to feed her baby. A short while later, Plaintiff received a call from her mother, Verleana Wilkins,[3] telling her that she needed to come get her children because the house was full of Grand Rapids police officers. Verleana Wilkins testified that she wanted Plaintiff to bring her video camera with her. Plaintiff, however, denies being told by anyone to bring

---

[2] During the course of the ensuing chaotic events, Plaintiff's mother, Verleana Wilkins attempted to block the officers with her body from pursuing Tyrosh Brown. Brown himself attempted to throw bleach into the eyes of an officer. Plaintiff's sister, Yashadera Wilkins, swung either a 5-pound or a 15-pound weight at another officer and bit him. After she had been arrested, Yashadera kicked out both rear windows of the police cruiser. Verleana Wilkins was not charged with an offense. Tyrosh Brown was charged and convicted of assaulting, resisting or obstructing an officer. Yashadera Wilkins was charged as a juvenile with aggravated assault of a police officer, resisting arrest and criminal destruction of police property.

[3] In the complaint, Plaintiff alleges that she received the second call from her sister, Yashadera. However, both during the criminal trial and during her deposition, she testified that her mother called. (Mot. for Sum. J., Ex. F at 34, Ex. K at 22.) At her deposition, Plaintiff declared that all three had called, with her daughter calling her last. (Ex. K at 22.) Verleana Wilkins, however, denied that she personally called Plaintiff, stating that she had instructed either her daughter, Yashadera, or her boyfriend, Robert Martin, to tell Plaintiff to come and bring the video camera. (Ex. J at 14-16.)

the camera. Instead, she claims to have grabbed it without thinking as she walked past it on her way to the door. (Ex. K at 19, 25.)

Plaintiff drove the short distance to her brother's home at 128 Baylis, where her mother also lived. Numerous police vehicles were parked near the house. Plaintiff parked hurriedly and ran from her car toward the house, trying to make the video camera work. (Ex. F. at 41; Ex. K at 30-32.) Plaintiff testified that she wanted to enter the house to get to her children, but she briefly detoured to follow two police officers toward the driveway.[4] (Ex. K at 31-33.) Those officers have since been identified as Defendants Waichum and Cornell.

The officers turned toward the house. As Officer Cornell hurried up the steps to the porch, Plaintiff followed, getting between Cornell and Waichum and bumping into Cornell near the top of the approach stairs. Plaintiff testified that she wanted to get to the house to retrieve her children. (Ex. K at 28-29, 34.) Plaintiff testified that Cornell elbowed her, causing her to stumble back a bit, though she did not fall. Plaintiff again tried to get to the house. (Ex. K at 42, 44.) She testified that the officer behind her, Defendant Waichum, held her arms behind her back and Cornell used his baton to strike her left thigh twice. Moments later, Waichum performed a straight-arm bar take-down (Ex. D at 8) and swung her by the

---

[4]Other witnesses testified that she spent some time in front of the house, filming events. (Dep. of Juanita Steffens, Ex. H at 10, 12, 36; Dep. of Hans Steffens, Ex. I at 11; Tr. Test. of Mark Waichum, Ex. D at 5; Tr. Test. of Joshua Cornell, Ex. C at 128-29.)

5

arm to the ground.  One or more of the officers placed their knees on her back and handcuffed her.  Plaintiff was then led to the police car.  (Ex. F at 36-38; Ex. K at 47-50)

Plaintiff testified that she did not at any time hear any officer tell her to get back, though she acknowledged at her trial that the officer who elbowed her "hollered something" (Ex. F at 37), and she does not deny that the officers may have said things to her, but she did not hear them say anything.  (Ex. F at 43; Ex. K at 51.)  At trial, she testified, "I didn't pay any attention. . . . I don't – I had tunnel hearing, tunnel vision, just awful, makin' it up to my – the house – my brother's house."  (Ex. F at 42.)  At her deposition, she answered as follows:

> A. I'm not going to say they maintained complete silence, but I don't recall them saying anything to me.
>
> Q. Did you recall them saying anything to anybody that you heard?
>
> A. I heard just a bunch of noise, commotion wildness.  It was out of order.
>
> Q. But you don't recall hearing them say anything?
>
> A. Not exactly stuff.  I'm sure they were saying stuff, but not exact word or whatever.
>
> Q. I don't need exact words.  I just need what you remember them saying.
>
> A. I don't remember saying, I don't remember any words.  I don't know.

(Ex. K at 51.)  Plaintiff admitted that she knew the officers were trying to get to the house. (Ex. F at 43.)  Although Defendants and other witnesses testified that Plaintiff pushed or struck Cornell in the back with her video camera, Plaintiff denied any contact between the

6

camera and Defendant Cornell.[5] (See Ex. F at 45; Ex. K at 61-62.) Plaintiff testified that she believes that other witnesses who reported the push or strike with the video camera were mistaken. Plaintiff testified that she was struck by the police only twice, in the left thigh, before she was taken to the ground and handcuffed. (Ex. K at 54-55.)[6]

After the police handcuffed her, Plaintiff complained that the handcuffs were digging into her skin. She asked one of the officers to loosen them. One of the officers responded, loosening or readjusting the cuffs. (Ex. K at 56.) According to Plaintiff, the cuffs continued to hurt, and she claims that she again complained, though she was then placed into the vehicle without further adjustment. (Ex. K. at 56-57.)

Plaintiff testified that, after she was placed in the police cruiser, she began to have an asthmatic reaction, as a result of the exertion and the heat in the car. She asked someone to roll down the windows, which was done. (Ex. K at 58.) She then called out to her mother to bring her asthma inhaler, as her mother uses some of the same medications. An officer brought the medicine to Plaintiff. According to Plaintiff, the officer tried to give her the

---

[5]All witnesses except Plaintiff and her mother testified that Plaintiff pushed, struck or otherwise contacted Officer Cornell in the back with the video camera after he had elbowed her back. Witnesses include both Defendant police officers and two neighbors, Hans and Juanita Steffens. (See Tr. Test. of Hans Steffens, Ex. B at 106-07, 118; Tr. Test. of Joshua Cornell, Ex. C at 129-30; Tr. Test. of Mark Waichum, Ex. D at 5; Dep. Test. of Juanita Steffens, Ex. H at 17-18; Dep. Test. of Hans Steffens, Ex. I at 12-13, 16, 17, 33, 36.) The allegation that she struck or pushed Cornell with the video camera was the foundation for the charge of felonious assault.

[6]Plaintiff's testimony is consistent on this point with that of Officers Cornell and Waichum and Hans Steffens. Juanita Steffens testified that Officer Cornell struck and/or kicked Plaintiff additional times after she was on the ground.

wrong one. He did not try again, but placed the medicines on the back of the car. (Ex. K at 59-60.)

Plaintiff was in jail for two days. Shortly after her release, she went to the hospital emergency room complaining of tingling in the index finger and thumb of her right hand. She did not at that time complain of back pain. She alleges that, as the result of Defendants' actions in handcuffing her wrists too tightly and taking her to the ground, she has continued weakness in her hands, weakness in her wrist and back pain. (Ex. K at 74-76, 78, 85-88.)

Plaintiff ultimately was tried for felonious assault against Officer Joshua Cornell. After a jury trial in the Kent County Circuit Court, she was acquitted.

### III.

In Count I of her complaint, Plaintiff alleges that Defendants Cornell and Waichum used unconstitutionally excessive force and illegally arrested and imprisoned her, in violation of the Fourth Amendment to the United States Constitution. Counts II through IV allege state law claims of false arrest and imprisonment, negligent, intentional or wanton misconduct, and assault and battery. In their motion for summary judgment, Defendants argue that their actions were both constitutional and protected by qualified immunity.

A. § 1983 Due Process Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48

(1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

In determining whether a law enforcement officer is shielded from civil liability due to qualified immunity, the Sixth Circuit typically employs a two-step analysis: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310-11 (6th Cir. 2005) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  *See also Swiecicki v. Delgado,* 463 F.3d 489, 497-98 (6th Cir. 2006).  In addition to the two steps listed above, the Sixth Circuit occasionally performs a third step in the qualified immunity analysis.  *See Swiecicki*, 463 F.3d at 497-98 (citing *Estate of Carter*, 408 F.3d at 311 n. 2 ("Panels of this court occasionally employ a three-step qualified immunity analysis, as opposed to the two-step analysis set forth here . . . . [B]oth the two-step approach and the three-step approach can be said to capture the holding of [*Saucier*].")).  "When utilized, this third step requires inquiry into 'whether the plaintiff offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.'" *Swiecicki*, 463 F.3d at 498 (citing *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 905 (6th Cir. 2004)).

9

1. **Excessive force**

Plaintiff alleges that Defendants Cornell and Waichum violated her Fourth Amendment rights by using excessive force in arresting her.  In *Graham v. Connor*, 490 U.S. 386 (1989), the Supreme Court held that a free citizen's claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other seizure of his or her person, are to be evaluated under the Fourth Amendment's objective reasonableness test.  *Id.* at 388.  Determining whether the force used by a law enforcement officer to effect a particular seizure is "reasonable" under the Fourth Amendment requires "a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'"  *Graham*, 490 U.S. at 396 (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)).

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . With respect to a claim of excessive use of force, the same standard of reasonableness at the moment applies: "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," . . . violates the Fourth Amendment.  The calculus of the reasonableness must embody allowance for the fact that officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.

*Graham*, 490 U.S. at 396-97 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)); *see also Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006); *Dunigan v. Noble*, 390 F.3d 486, 493 (6th Cir. 2004).

The following factors have been used to evaluate whether a police officer's actions are reasonable: (1) the severity of the crime in issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Sigley*, 437 F.3d at 534. In assessing the reasonableness of an officer's use of force, the Court analyzes the events in segments. *Phelps v. Coy*, 286 F.3d 295, 302 (6th Cir. 2002).

Plaintiff's amended complaint generally alleges that Defendants Cornell and Waichum used excessive force during the entire course of their conduct involving Plaintiff. In her response to Defendants' motion for summary judgment, however, Plaintiff makes a more limited claim:

> The alleged excessive force in this case took place after Semone King was subdued by Officer Waichum. The testimony provided above from the criminal trial, at which Semone was acquitted, establishes that Officer Cornell struck her with his ASP while she was being restrained by Officer Waichum. In addition, Officer Cornell gave no instruction or command to Semone before he struck her. In addition, because the testimony establishes that Semone did not at any time resist or struggle with the officers, throwing her to the ground could constitute excessive force. Testimony further establishes that the officers continued to strike Semone while she was on the ground and not resisting.

(Pl. Br. in Response to Def. Mot. for Sum. J. at 6.) Defendants argue that the above statement amounts to Plaintiff's abandonment of any excessive force claim for conduct occurring prior to the time she was taken to the ground by Officer Waichum. In context, however, the Court construes Plaintiff's argument as limiting her claim to actions taken after

11

such time as Officer Cornell allegedly elbowed her back and Officer Waichum took hold of her arms behind her back.

First, with respect to Defendant Cornell's use of the ASP baton to twice strike Plaintiff's left thigh, Plaintiff does not dispute that, after she was elbowed back by Officer Cornell, she continued to try to get to the door of the house. Plaintiff denies striking Officer Cornell with her video camera, either accidentally or purposefully. She also denies hearing or remembering any officer tell her to stay back from the house. However, she repeatedly acknowledged at deposition that the officers were not silent and said something to her. She also acknowledged having "tunnel hearing." Numerous witnesses testified that they heard officers repeatedly instruct Plaintiff to get back. Plaintiff acknowledged that her neighbor, Hans Steffens, may have heard something she did not hear. (Ex. K at 35.) Plaintiff admitted that she knew the officers were trying to get into the house and that she was not thinking about whether she was getting in their way or whether they wanted her to stay back. (Ex. K at 42-43.) Moreover, while Verleana Wilkins testified that she did not hear the officers say anything to Plaintiff (Ex. J at 29), Wilkins was inside the house, observing out the front door. (Ex. J at 19-20.) In addition, Wilkins did not arrive at the front door until Officer Cornell already was on the front porch. (Ex. J at 21-22, 28-29.) Verleana Wilkins' testimony, therefore, cannot fully refute the testimony of other witnesses that Plaintiff was given numerous instructions to stay back, with which she did not comply. As a result, neither

Plaintiff's testimony nor that of Verleana Wilkins is sufficient to create a genuine issue of material fact as to whether the officers instructed her to stay back before using any force.

Further, while the Sixth Circuit has held that "the use of force after a suspect has been incapacitated or neutralized is excessive as a matter of law," *Baker v. City of Hamilton*, No. 05-4390, slip op. at 5-6 (6th Cir. Dec. 18, 2006) (citing *Shreve v. Jessamine Cty. Fiscal Court*, 453 F.3d 681, 687 (6th Cir. 2006)), Plaintiff has introduced no evidence suggesting that she had stopped attempting to move toward the porch when Cornell administered the baton strikes. She therefore has failed to show that she was incapacitated at the time Cornell struck her in the thigh with the baton.

Given the chaotic circumstances existing at the time, during which officers inside the house had called Defendants for backup, where Plaintiff's brother was involved in a highly confrontational situation with officers, where Plaintiff's sister had assaulted an officer and had been placed in a police car from which she had kicked out the windows, where Plaintiff acknowledges a great deal of shouting and screaming was ongoing, Cornell acted reasonably to elbow Plaintiff away from the door. Even assuming Plaintiff did not strike Cornell with her camera or did not intentionally do so, where Plaintiff continued to try to enter the home, contrary to police instructions and after being elbowed back, Cornell reasonably acted to strike Plaintiff's left pernoneal nerve with his baton, in an attempt to stop her from proceeding. When she was not stopped by those blows, Defendants reasonably acted to take Plaintiff to the ground in the course of making an arrest.

13

Plaintiff next contends that an unknown number of officers held her down with knees on the lower part of her back. (Ex. K at 52-53.) She expressly declares that she did not resist the officers and that they had no difficulty handcuffing her. While Cornell (Ex. C at 133-34), Waichum (Ex. D at 18-20), Hans Steffens (Ex. B at 109-110) and Juanita Steffens (Ex. H at 22-23, 48-49, 52) all testified that Plaintiff kept attempting to get up or otherwise resist, the Court will accept for purposes of this motion that Plaintiff did not resist being handcuffed once on the ground.

Even assuming Plaintiff did not resist, it was not objectively unreasonable for officers in the circumstances existing in this case to place their knees on Plaintiff's back to hold her down while they handcuffed her. "The question is whether the undisputed facts 'demonstrate that a hypothetical reasonable officer' would have 'known that his actions, under the circumstances, were objectively unreasonable,' . . . not whether [Defendants] used the least intrusive means available." *Lyons v. City of Xenia,* 417 F.3d 565, 576 (6th Cir. 2005) (quoting *Scott v. Clay County*, 205 F.3d 867, 877 (6th Cir. 2000)); *see also Saucier v. Katz*, 533 U.S. 194, 205 (2001) ("If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed."); *Illinois v. Lafayette*, 462 U.S. 640 (1983) (noting in the Fourth Amendment context that reasonableness of governmental activity does not hinge on existence of a less-intrusive alternative). Plaintiff expressly denies any memory of being kicked, punched or struck with a baton while she was on the ground. Given Plaintiff's failure to heed

14

verbal commands, her continued attempts to enter the house after being pushed away, and in light of the chaotic circumstances as they existed at the time, the officers' modest and limited use of force to arrest and restrain Plaintiff was objectively reasonable.

Plaintiff also complains that the officers used excessive force by handcuffing her too tightly. The Fourth Amendment prohibits unduly tight handcuffing in the course of an arrest. *See Lyons,* 417 F.3d at 575-76; *Martin v. Heideman*, 106 F.3d 1308, 1313 (6th Cir. 1997); *Walton v. City of Southfield*, 995 F.2d 1331, 1342 (6th Cir. 1993). And this general principle, it is also true, was "clearly established" under Sixth Circuit case law at the time of Lyons' arrest. *See Martin*, 106 F.3d at 1313. Not all allegations of tight handcuffing, however, amount to excessive force. *Lyons*, 417 F.3d at 575-76. In order to reach a jury on this claim, the Plaintiff must allege some physical injury from the handcuffing and must show that officers ignored plaintiff's complaints that the handcuffs were too tight. *Lyons*, 417 F.3d at 576 (citing *Neague v. Cynkar*, 258 F.3d 504, 508 (6th Cir. 2001)); *Burchett v. Kiefer*, 310 F.3d 937, 944-45 (6th Cir. 2002) (rejecting excessive-force claim as a matter of law where officers left defendant tightly handcuffed for three hours because defendant did not initially complain about the handcuffs, and when he did complain the officers responded promptly). *Cf. Martin*, 106 F.3d at 1313 (finding district court erred by granting qualified immunity because officers handcuffed the defendant so tightly that his hands became numb and swollen, then failed to respond to the defendant's complaints of pain until 35 minutes later).

At her deposition, Plaintiff acknowledged that, when she complained, an officer promptly attempted to loosen and adjust the handcuffs. Even assuming the adjustments were negligently performed, no genuine issue of material fact exists that officers intentionally inflicted unnecessary force under such circumstances.

Finally, Plaintiff claims that she experienced an asthmatic reaction while sitting in the cruiser. She acknowledges, however, that when she asked for asthma medications, they were brought. One of the officers attempted to administer one type of inhaler, but Plaintiff rejected treatment, claiming it was not the right type of medicine. Plaintiff's allegations do not reflect any deliberate indifference to her physical condition or intentional imposition of unnecessary force.

In sum, Plaintiff has failed to demonstrate the existence of a genuine issue of material fact that Defendants used excessive force in arresting and restraining her.

Moreover, even assuming the force used was questionably excessive, a conclusion the Court rejects, Defendants would be entitled to qualified immunity for their actions. Where the legality of a particular amount of force is questionable, officers are entitled to qualified immunity if a reasonable officer in the circumstances could have concluded the use of force was legal. *See Saucier*, 533 U.S. at 206 (citing *Anderson v. Creighton*, 483 U.S. 635, 643 (1987)). Here, "the constitutional violation, if any, was by no means an 'obvious' one . . . ." *Lyons*, 417 F.3d at 579. No precedent "squarely covers the case here." *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004). *See Lyons*, 417 F.3d at 579 (discussing equivocal case authority

governing an officer's decision to "tackle" a suspect).  A reasonable officer in the highly charged circumstances of this case could have concluded that the limited force they exercised was legal.

For both reasons, Defendants are entitled to qualified immunity on the claim of excessive force.

### 2. Illegal arrest and imprisonment

Plaintiff next alleges that Defendants unconstitutionally arrested and imprisoned her. In order to determine whether a warrantless arrest was constitutional under the Fourth Amendment, a court must determine whether probable cause existed for the arrest. *Smith v. Thornburg*, 136 F.3d 1070, 1076 (6th Cir. 1998).  The question this Court must answer is "'whether, at the moment the arrest was made, the officers had probable cause to make it – whether at that moment the facts and circumstances within their knowledge and of which they had reasonable trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'"  *Donovan v. Thames*, 105 F.3d 291, 298 (6th Cir. 1997) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)); *see also Swiecicki v. Delgado*, 463 F.3d at 498.  In making that determination, the Court must consider the totality of the circumstances.  *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  The existence of probable cause for arrest forecloses a claim of false arrest.  *See Stemler v. City of Florence*, 126 F.3d 856, 871-72 (6th Cir. 1997).

In the instant case, assuming the facts in the light most favorable to Plaintiff, the Defendants had probable cause to make an arrest. Accepting for purposes of this motion that Plaintiff's camera never came in contact with Officer Cornell, a reasonable officer in Defendants' circumstances nevertheless could have concluded that Plaintiff was ignoring and obstructing police efforts to keep her from entering the home, in violation of MICH. COMP. LAWS § 750.81d. One of the offenses for which she was arrested was resisting or obstructing an officer. (Ex. L, Incident Report of Mark Waichum at 1.).[7]

A person is guilty of obstructing a police officer if he "obstructs . . . a person who the individual knows or has reason to know is performing his or her duties . . . ." MICH. COMP. LAWS § 750.81d. "'Obstruct' includes the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command." *Id.* Plaintiff admitted she knew police were talking and that she understood they did not want her to enter the house. She also acknowledged that she had rushed up the stairs and had collided with Cornell while trying to enter the house. She tried again to enter the house after Cornell had pushed her

---

[7]Even if Plaintiff was never charged with resisting or obstructing an officer, the existence of probable cause to arrest her for that offense is sufficient to bar her Fourth Amendment claim. It is constitutionally irrelevant whether an officer's subjective reason for arresting an individual is the same as that for which probable cause exists. *See Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) ("An arresting officer's state of mind, except for the facts that he knows, is irrelevant to the existence of probable cause."). "The Supreme Court has made it clear that there is no requirement 'that the offense establishing probable cause must be "closely related" to, and based on the same conduct as, the offense identified by the arresting officer at the time of arrest . . . .'" *United States v. Abdi,* 463 F.3d 547, 559 (6th Cir. 2006) (quoting *Devenpeck*, 543 U.S. at 153).

away. Taken together, a reasonable officer could have concluded that Plaintiff was obstructing or resisting an officer.

Moreover, the fact that Plaintiff was bound over and tried for the offense of felonious assault amounts to a state-court finding that precludes Plaintiff's claim. Where a party has had a full and fair opportunity to litigate an issue at an earlier state proceeding, the party is precluded from relitigating the same issue in a later federal case. *Coogan v. City of Wixom*, 820 F.2d 170, 175 (6th Cir. 1987), *overruled on other grounds by Frantz v. Village of Bradford*, 245 F.3d 869, 874 (6th Cir. 2001). Michigan provides for the holding of a preliminary examination in all felony criminal cases for the purpose of determining whether probable cause exists to believe both that an offense not cognizable by the district court exists and that the defendant committed it. MICH. CT. R. 6.110(E); MICH. COMP. LAWS 766.13. Although the record does not reflect whether the preliminary hearing was actually held in Plaintiff's criminal case or was waived by Plaintiff, Plaintiff had the opportunity to litigate the issue and is barred from raising the issue in this proceeding.

B.   State-law Claims

To the extent Plaintiff asserts violations of state law, the Court declines to exercise supplemental jurisdiction. Where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits. *See Landefeld v. Marion General Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *Faughender v. City of*

19

*North Olmsted*, 927 F.2d 909, 917 (6th Cir. 1991).  Accordingly, Plaintiff's state law claims are dismissed without prejudice.

**IV.**

For the foregoing reasons, the Court will grant Defendants' motion for summary judgment.  A judgment consistent with this opinion shall be entered.


Date:   December 19, 2006         /s/ Robert Holmes Bell
                                  ROBERT HOLMES BELL
                                  CHIEF UNITED STATES DISTRICT JUDGE